UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -   x

LAURIE J. FINE,                                          :    Index No. 5:12-cv-00836 (LEK) (DEP)

                                                         :

                    Plaintiff,                           :    ECF Case

             -against-                                   :

ESPN, Inc., a subsidiary of Walt Disney, Inc.; MARK      :
SCHWARZ, in his individual capacity and as an            :
employee of ESPN, and ARTHUR BERKO, in his               :
individual capacity and as an employee of ESPN,          :

                    Defendants.                          :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -   x


# MEMORANDUM IN SUPPORT OF MOTION
# TO DISMISS PLAINTIFF'S COMPLAINT IN PART

LEVINE SULLIVAN KOCH & SCHULZ, LLP
   Nathan E. Siegel
   Thomas Curley (*pro hac vice* admission pending)
   Paul J. Safier (*pro hac vice* admission pending)
1899 L Street, N.W., Suite 200
Washington, DC 20036
(202) 508-1100

*Attorneys for Defendants ESPN Inc.,*
*Mark Schwarz and Arthur Berko*

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................................................. ii

PRELIMINARY STATEMENT ....................................................................................... 1

BACKGROUND ............................................................................................................. 2

STANDARD OF REVIEW ............................................................................................. 9

ARGUMENT .................................................................................................................. 10

CONCLUSION ............................................................................................................... 13

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009)................................................................................9

*Beary v. West Publishing Co.,*
    763 F.2d 66 (2d Cir. 1985)...................................................................10

*Becher v. Troy Publishing Co.,*
    183 A.D.2d 230, 589 N.Y.S.2d 644 (3d Dep't 1992).........................11

*Bell Atlantic Corp. v. Twombly,*
    550 U.S. 544 (2007) ..............................................................................9

*Brown v. Kopek,*
    2011 WL 3737921 (N.D.N.Y. Aug. 24, 2011) (Kahn, J.) ....................9

*Chambers v. Time Warner, Inc.,*
    282 F.3d 147 (2d Cir. 2002)...................................................................4

*Chandok v. Klessig,*
    648 F. Supp. 2d 449 (N.D.N.Y. 2009)...................................................1

*Cholowsky v. Civiletti,*
    69 A.D.3d 110, 887 N.Y.S.2d 592 (2d Dep't 2009) ...........................12

*Church of Scientology International v. Time Warner, Inc.,*
    903 F. Supp. 637 (S.D.N.Y. 1995) ........................................................1

*Cortec Industries, Inc. v. Sum Holding, L.P.,*
    949 F.2d 42 (2d Cir. 1991)....................................................................4

*Curto v. Medical World Communications, Inc.,*
    388 F. Supp. 2d 101 (E.D.N.Y. 2005) ...................................................1

*Dworin v. Deutsche,*
    2008 WL 508019 (S.D.N.Y. Feb. 22, 2008)..........................................4

*Easton v. Public Citizens, Inc.,*
    1991 WL 280688 (S.D.N.Y. Dec. 26, 1991) ..................................10, 13

*Feldman v. Edwab,*
    2011 WL 1298717 (N.D.N.Y. Mar. 31, 2011) (Kahn, J.)......................9

*Freeze Right Refrigeration & Air Conditioning Services, Inc. v. New York,*
    101 A.D.2d 175, 475 N.Y.S.2d 383 (1st Dep't 1984) ........................11

*Glantz v. Cook United, Inc.*,
   499 F. Supp. 710 (E.D.N.Y. 1979) ..........................................................................10, 12, 13

*Glendora v. Gannett Suburban Newspapers*,
   201 A.D.2d 620, 608 N.Y.S.2d 239 (2d Dep't 1994) ................................................12

*Holy Spirit Association for Unification of World Christianity v. New York Times Co.*,
   49 N.Y.2d 63, 424 N.Y.S.2d 165 (1979) .................................................................11

*Komarov v. Advance Magazine Publishers, Inc.*,
   180 Misc. 2d 658, 691 N.Y.S.2d 298 (Sup. Ct. N.Y. Cnty. 1999) ...........................10

*McNamee v. Clemens*,
   762 F. Supp. 2d 584 (E.D.N.Y. 2011) .......................................................................1

*Mulder v. Donaldson, Lufkin & Jenrette*,
   161 Misc. 2d 698, 611 N.Y.S.2d 1019 (N.Y. Sup. Ct. N.Y. Cnty. 1994)...............12

*Pelayo v. Celle*,
   270 A.D.2d 469, 705 N.Y.S.2d 282 (2d Dep't 2000) .........................................10, 13

*Rothman v. Gregor*,
   220 F.3d 81 (2d Cir. 2000)........................................................................................6

*Scherer v. Equitable Life Assurance Society of United States*,
   347 F.3d 394 (2d Cir. 2003)......................................................................................6

*Southridge Capital Management, LLC v. Lowry*,
   2003 WL 68041 (S.D.N.Y. Jan. 7, 2003) ...............................................................10

*Test Masters Educational Services, Inc. v. NYP Holdings, Inc.*,
   603 F. Supp. 2d 584 (S.D.N.Y. 2009) ......................................................................10

*Treppel v. Bovail Corp.*,
   2004 WL 2339759 (S.D.N.Y. Oct. 15, 2004) .............................................................1

*Uzamere v. Daily News, L.P.*,
   34 Misc. 3d 1203(A), 946 N.Y.S.2d 69 (Sup. Ct. N.Y. Cnty. Nov. 10, 2011)........10

*Wenz v. Becker*,
   948 F. Supp. 319 (S.D.N.Y. 1996) ...........................................................................10

*Yak v. Bank Brussels Lambert*,
   252 F.3d 127 (2d Cir. 2001).......................................................................................4

*Zu Guo Yang v. Shanghai Cafe Inc.*,
   2012 WL 398641 (S.D.N.Y. Feb. 8, 2012)..................................................................1

iii

**STATUTES**

New York Civil Rights Laws § 74.......................................................................................10, 13

**RULES**

Federal Rule of Civil Procedure 12(b)(6) ..............................................................................1

## PRELIMINARY STATEMENT[1]

Defendants ESPN Inc., Mark Schwarz and Arthur Berko (collectively, "ESPN") hereby move pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss the libel claim of plaintiff Laurie J. Fine ("Ms. Fine") as to the statements collectively referred to in the Complaint as "Libelous Statement 5."[2]

Ms. Fine's purported libel claims arise out of ESPN's reporting about her relationship to sexual abuse allegations made by two persons against Ms. Fine's husband, Bernie Fine ("Mr. Fine"), a long-time assistant basketball coach for the Syracuse University men's basketball team.  Ms. Fine principally challenges ESPN's reporting on allegations made by Robert Davis ("Mr. Davis" or "Bobby Davis"), a former ball boy for the Syracuse men's basketball team, specifically that Ms. Fine was aware of her husband's alleged abuse of him; and also that she herself had a sexual relationship with Mr. Davis when he was eighteen years old.  Those allegations were supported by a recorded phone call between Ms. Fine and Mr. Davis, portions of which were included in ESPN's reporting.

---

[1] All unpublished decisions cited in this Memorandum are collected together as Exhibit A to the Declaration of Nathan E. Siegel ("Siegel Declaration").

[2] Although Ms. Fine chose to plead her complaint such that each of the different statements of which she complains is grouped in a single count, the law is clear that "each allegedly libelous statement [must be considered] individually."  *Church of Scientology Int'l v. Time Warner, Inc.*, 903 F. Supp. 637, 641 (S.D.N.Y. 1995); *see also Chandok v. Klessig*, 648 F. Supp. 2d 449, 456 (N.D.N.Y. 2009) ("Plaintiff has averred 23 statements as defamatory, each of which must satisfy these basic elements of a defamation claim.").  Accordingly, courts reviewing defamation claims based on multiple statements routinely dismiss particular statements from such suits where they cannot give rise to liability.  *See, e.g.*, *Zu Guo Yang v. Shanghai Cafe Inc.*, 2012 WL 398641, at *9 (S.D.N.Y. Feb. 8, 2012); *McNamee v. Clemens*, 762 F. Supp. 2d 584, 612 (E.D.N.Y. 2011); *Curto v. Med. World Commc'ns, Inc.*, 388 F. Supp. 2d 101, 111-12 (E.D.N.Y. 2005); *Treppel v. Bovail Corp.*, 2004 WL 2339759, at *17 (S.D.N.Y. Oct. 15, 2004); *Church of Scientology*, 903 F. Supp. at 644.  In moving to dismiss just as to Statement 5, ESPN does not in any way concede that the other five challenged statements can support viable defamation claims and in fact vehemently contests that the statements are actionable.

However, this motion focuses on what the Complaint labels "Libelous Statement 5." The publications referenced in that statement report on a lawsuit Mr. Davis and another one of Mr. Fine's accusers, Mike Lang ("Mr. Lang"), filed against Syracuse men's basketball head coach Jim Boeheim (the "Boeheim lawsuit"). Specifically, the Complaint challenges reporting on allegations Mr. Davis made in a court filing that Ms. Fine had sexual relationships with Syracuse men's basketball players, as well as statements made by the trial judge and lawyers at a motions hearing and in the trial judge's subsequent ruling.

The libel claim based on Statement 5 must be dismissed as a matter of law. Under well-settled New York law, a publisher cannot be liable when it publishes a "fair and true" report of a judicial proceeding, even if the publication repeats allegations made about a participant to that proceeding that are alleged to be false. Ms. Fine does not, and cannot, allege that ESPN's reporting on the Boeheim lawsuit was inaccurate.

Accordingly, Ms. Fine's libel claim based on Statement 5 should be dismissed and this suit should proceed only on the remaining statements of which she complains.

## BACKGROUND

*The parties*. Plaintiff Ms. Fine is the wife of Mr. Fine, who until recently was an assistant coach for Syracuse's celebrated men's basketball team. Compl. ¶¶ 3, 19-20. According to Ms. Fine, her status as the "wife of an assistant coach" in a "community in which the basketball program was revered" has afforded her a number of opportunities to play a public role in her community, including to play prominent roles in several charitable organizations dedicated to child welfare and to host a radio show dedicated to Syracuse basketball. *Id.* at ¶¶ 21-26.

Defendant ESPN is media organization that focuses on sports-related content.  Compl. ¶¶ 8-9.  Defendant Mark Schwarz ("Mr. Schwarz") is a reporter for ESPN.  *Id.* at ¶¶ 10-11. Defendant Arthur Berko ("Mr. Berko") is a producer who worked with Mr. Schwarz on some of the publications at issue.  *Id.* at ¶¶ 12, 280-81.

***The challenged publications***.  In her Complaint, Ms. Fine challenges portions of five news reports that ESPN published between November 2011 and February 2012, each of which addresses, in some fashion, allegations made by Mr. Davis about Ms. Fine and three of which concerned the recorded phone call.  Compl. ¶¶ 175, 179, 224-225.  From these five reports, Ms. Fine derives six discrete alleged  "Libelous Statements."  *Id.* at ¶¶ 175, 179, 224-225.  The five reports can be divided into two categories:

1.   The November 27, 2011 ESPN Reports

The Complaint principally focuses on an ESPN television news report and companion internet article published on November 27, 2011, entitled respectively *Bernie Fine's wife had abuse concerns*[3] and a related internet article allegedly first published the same date entitled *Bernie Fine fired amid abuse concerns*.  Those ESPN reports, in part, describe and quote excerpts from a tape recording Mr. Davis made of a 2002 phone conversation with Ms. Fine. Compl. ¶¶ 175, 177-179.  "Libelous Statements" 1 through 4 and 6, which are not at issue in this motion, concern those reports.

With respect to the November 27 reports, the Complaint complains in large part about a few of the tape excerpts quoted in the reports, and contends that on that phone call Ms. Fine was actually discussing:  (1) "her husband's enabling of Mr. Davis' dependence upon the Fines for

_____

[3] *See* http://espn.go.com/espn/otl/story/_/id/7286347/otl-audio-tape-syracuse-orange-assistant-bernie-fine-wife-admits-worries-abuse (last visited July 23, 2012); *see also* http://espn.go.com/mens-college-basketball/story/_/id/7288286/bernie-fine-fired-syracuse-orange-amid-molestation-allegations (last visited July 23, 2012).

money"; (2) "her husband's occasional use of corporal punishment and reprimanding" of Davis [who was not his child]; and (3) alleged threats by Mr. Davis to mislead NCAA investigations into Syracuse basketball.  *See, e.g.,* Compl. ¶ 188.  Ms. Fine further alleges that the full recording demonstrates that she was actually repeatedly confirming that her husband had never "sexually molested" Davis.  *Id.*

Although the Complaint places into issue a few of the tape excerpts played on the November 27 broadcast report, it curiously does not mention most of the excerpts ESPN aired, and, more specifically, it does not address any excerpt from the phone call that most explicitly refers to sex.  These include excerpts such as the following aired on the report:[4]

| | |
|---|---|
| Laurie Fine: | What did he want you to do?  You can be honest with me. |
| Bobby Davis: | So, what do you think?  What he always does. |
| Laurie Fine: | What?  He wants you to grab him?  Or blow him? |
| Bobby Davis: | No, he's… He's trying to make me… No, he'd try to make me grab him, I mean, he's like – but at first he would grab me and start, you know, touching me… |
| Laurie Fine: | But you never had any oral sex with him? |
| Bobby Davis: | No. |
| Laurie Fine: | No. |
| Bobby Davis: | He, he… I think he would want to, but… |
| Laurie Fine: | Oh, of course, he would!  Why wouldn't he? |

* * * *

| | |
|---|---|
| Laurie Fine: | When he gave you the money, what does he want for that?  He wants you to grab him or he wanted to do you? |

---

[4] A true and correct copy of the November 27, 2011 ESPN broadcast posted on its website, referenced in the Complaint, is contained on the DVD marked as Exhibit B to the Siegel Declaration.  This Court can consider the broadcast, as well as copies of the other publications on which Ms. Fine is suing, on a motion to dismiss.  *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (documents "integral to the complaint" may be considered on a motion to dismiss); *Yak v. Bank Brussels Lambert*, 252 F.3d 127, 130 (2d Cir. 2001) ("On a motion to dismiss, the court may consider 'any written instrument attached to [the complaint] as an exhibit or any statements or documents incorporated in it by reference.'" (quoting *Cortec Indus., Inc. v. Sum Holding, L.P.*, 949 F.2d 42, 47 (2d Cir. 1991)); *Dworin v. Deutsche*, 2008 WL 508019, at *3 (S.D.N.Y. Feb. 22, 2008) (granting motion to dismiss on defamation claims based on consideration of the publications complained of).

Bobby Davis:   He wanted to do me.  He wanted me to touch him, too.  He tried to make me touch him a couple of times, he'd grab my hand, and then I'd pull away, and then he'd put me in your bed, and then you know, put me down, and I'd try to go away, and he'd put his arm on top of my chest.  He goes, "if you want this money, you'll stay right here," you know.

Laurie Fine:   Right. Right… He just has a nasty attitude, because he didn't get his money, nor did he get what he wanted.  He didn't get…

Bobby Davis:   It's not about the money.

Laurie Fine:   It's about the dick.  I know that.  So you're – I'm just telling you for your own good, you're better off just staying away from him.

* * * *

Laurie Fine:   You know what?  Go to a place where there's gay boys, find yourself a gay boy… You know, get your rocks off, have it be over with.

Bobby Davis:   Yeah, but…

Laurie Fine:   You know, he needs a, that male companionship that I can't give him, nor is he [Mr. Fine] interested in me, and vice versa.

* * * *

Laurie Fine:   Because I care about you, and I didn't want to see you being treated that way…

Bobby Davis:   Yeah.

Laurie Fine:   And, it's hard for, if it was another girl like I told you, it would be easy to step in because you know what you're up against, you're, you're when it's someone, it's another guy, you can't compete with that.  It's just wrong, and you were a kid.  You're a man now, but you were a kid then.

Siegel Decl. Ex. B.

       The Complaint does not address whether, with respect to these and numerous other similar portions of the 47-minute phone call recording that ESPN did not telecast, Ms. Fine likewise contends that she was simply discussing unpaid student loans, corporal punishment, and NCAA basketball investigations.  In any event, ESPN vigorously denies Ms. Fine's allegations with respect to the November 27 reports, and will file a motion for summary judgment addressing them following discovery.

5

2.  <u>The January and February 2012 Reports</u>

Statement 5, which is the subject of this motion, relates to two different publications: *Affidavit: Fine's wife slept with players* ("*Affidavit*") and *Judge: Laurie Fine claims not relevant* ("*Judge*").[5]  Compl. ¶¶ 223-231.  These articles, which were published in January and February of 2012, report on developments in a lawsuit filed by Mr. Davis and Mr. Lang against Syracuse University and its head basketball coach, Jim Boeheim.  Specifically, the articles report on judicial proceedings in that litigation related to allegations made in an affidavit filed by Mr. Davis that Ms. Fine had multiple sexual relationships with Syracuse men's basketball players.  Compl. ¶¶ 224-255; Siegel Decl. Exs. C, D.

The first article, *Affidavit*, reports on an affidavit[6] filed by Mr. Davis in the Boeheim lawsuit.  Siegel Decl. Exs. C, E.  In that affidavit, Mr. Davis alleged that "[f]or years, Bernie Fine's wife, Laurie Fine, had sexual relationships with basketball team players.  Players used to joke openly about it as a known fact . . . ."  Siegel Decl. Ex. E ¶ 5; *see also id.* at ¶¶ 8, 11, 14.  The affidavit also refers to what it describes as "[t]he fundamentally dysfunctional relationships that the Fines maintained," and asserts that Boeheim must have been aware of the rumors about Ms. Fine's conduct.  *Id.* at ¶ 7.  The article summarizes the substance of the affidavit, and also quotes a lawyer for Ms. Fine, who is harshly critical of the affidavit.  Siegel Decl. Ex. C.

The second article, *Judge*, is not even authored by ESPN, but rather on its face is simply a re-publication of an article authored and disseminated by the Associated Press, a national wire

---

[5] A true and correct copy of *Affidavit* is attached as Exhibit C to the Siegel Declaration. A true and correct copy of *Judge* is attached as Exhibit D to the Siegel Declaration.

[6] A true and correct copy of the Mr. Davis's January 30, 2012 Affidavit, which is the one referred to in the article, is attached as Exhibit E to the Siegel Declaration.  This Court may take judicial notice of court filings when ruling on a motion to dismiss.  *See Rothman v. Gregor*, 220 F.3d 81, 92 (2d Cir. 2000); *Scherer v. Equitable Life Assurance Soc'y of U.S.*, 347 F.3d 394, 402 (2d Cir. 2003).

service.  *See* Siegel Decl. Ex. D.  In any event, *Judge* describes the results of a hearing in the

Boeheim lawsuit, which resulted in a ruling excluding Mr. Davis's allegation about Ms. Fine's

conduct from that litigation.[7]   At that hearing, counsel for Mr. Davis and Mr. Lang, Marianne

Wang, had the following exchange with Justice Anil C. Singh:

> Ms. Wang:      This was not in any way secret information.  There had been prior
> indications from Bobby Fine in interviews he'd given to media that
> this was an element of the dysfunctional – the severe dysfunctional
> relationship that apparently Laurie and Bernie Fine had with each
> other and with many young men and boys that [were] part of the
> program.

> The Court:      . . . So what is the relationship between the alleged conduct
> between Mrs. Fine and basketball players and statements made by
> Boeheim at the various instances that you plead in the complaint?

> Ms. Wang:      Well, Your Honor, as we set forth in both our opening and our
> reply, it goes directly to Boeheim's knowledge when he made the
> statements that our clients are liars and money grubbers,
> effectively; what did he know[?]

Siegel Decl. Ex. F at 9:7-25.  In his opinion announcing his ruling, Justice Singh

described the controversy as follows:

> In support of their motion . . . , plaintiff Robert Davis executed a
> sworn affidavit alleging that, for years, Bernie Fine's wife, Laurie
> Fine, had sexual relationships with basketball team players; that
> Bernie Fine – Boeheim's associate head coach and the man in
> charge of recruiting players – knew that Laurie Fine was having
> inappropriate sexual relations with players and he never appeared
> to object to it; and that it is difficult, if not impossible, to imagine
> that Boeheim did not hear or learn from the players themselves
> or others that Laurie Fine had such repeated inappropriate sexual
> relations.

---

[7] A true and correct copy of the transcript of the February 10, 2012 hearing before
Justice Singh, which is the hearing referred to in *Judge*, is attached as Exhibit F of the Siegel
Declaration.  A true and correct copy of Justice Singh's February 10, 2010 opinion, which is the
ruling referred to in *Judge*, is attached as Exhibit G of the Siegel Declaration.

Siegel Decl. Ex. G at *1; *see also id.* at *2 ("Plaintiffs request for discovery pertaining to Laurie Fine's alleged inappropriate sexual relations with multiple players is denied.").

***The alleged defamation***.  Ms. Fine challenges several portions of *Affidavit* and *Judge* that reference the allegations Mr. Davis made about her supposed relationships with Syracuse basketball players, grouping those excerpts together as "Statement 5."  Compl. ¶¶ 224-225.  Specifically, she challenges the following statement from *Affidavit:*

> In the affidavit, Bobby Davis, a former ball boy with the men's team, says he was present on several occasions with basketball players when he heard them speaking of having sex with Laurie Fine.  Davis said players joked about it and it seemed to be an openly known fact that Laurie Fine had sex with basketball players.

*Id.* at ¶ 224.  Ms. Fine does not allege that, in reporting Mr. Davis's allegations about her conduct, Statement 5 *misrepresents* the affidavit Mr. Davis filed.  Rather, she alleges that "Statement 5 is false because [she] never had a sexual relationship of any kind with any player on the Syracuse basketball team."  *Id.* at ¶ 227.

With respect to *Judge*, the Complaint challenges the following statements:

> Salacious claims about the wife of an assistant Syracuse University basketball coach who was fired after claims that he molested boys have no bearing in the slander lawsuit two of the men brought against the team's coach, a judge ruled Friday.
>
> . . .
>
> Before the ruling, a lawyer for the men, Marianne Wang, argued that Laurie Fine's alleged affairs point to an atmosphere of "dysfunctional" sexual relationships surrounding the Fines . . .
>
> . . .
>
> The former ball boys sought addresses for all Syracuse basketball team Members from 1992 to 1997, the names of anyone who may have had a sexual relationship with either Bernie or Laurie Fine and information on what the university or [head coach Jim] Boeheim knew about her alleged affairs with players and ball boys, among other information.

. . .

'What is the relationship between the alleged conduct of Mrs. Fine and basketball players and the statements made by Boeheim?' Judge Singh asked.

'This was an element of the severe dysfunctional relationship that, apparently, Laurie and Bernie Fine had with one another,' and others, Wang responded.  'It goes directly to Boeheim's knowledge.  When he made the statements that our clients are liars and money-grubbers, effectively, what did he know?'

Compl. ¶ 225.  Here again, Ms. Fine does not allege that the article misrepresents Justice Singh's ruling, its descriptions of the allegations in the affidavit, or statements by counsel during the hearing.

### STANDARD OF REVIEW

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  In applying this standard, "[a]ny legal conclusions, deductions, or opinions couched as factual allegations are not accorded a presumption of truthfulness."  *Brown v. Kopek*, 2011 WL 3737921, *3 (N.D.N.Y. Aug. 24, 2011) (Kahn, J.).  The ultimate question is whether the "*factual content*" in the complaint is sufficient to allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678 (emphasis added).

"Under New York law, the requisite elements of a defamation claim are 'a false statement, *published without privilege* or authorization to a third party, constituting fault as judged by, at a minimum, a negligence standard, and, it must either cause special harm or constitute defamation per se."  *Feldman v. Edwab*, 2011 WL 1298717, at *5 (N.D.N.Y. Mar.

9

31, 2011) (Kahn, J.) (emphasis added) (quoting *Dillon v. City of New York*, 261 A.D.2d 34, 38 (1st Dep't 1999)).

## ARGUMENT

Section 74 of the New York Civil Rights Laws provides, in pertinent part, that "[a] civil action cannot be maintained against any person, firm or corporation, for the publication of a fair and true report of any judicial proceeding . . . ."  N.Y. Civ. Rights Law § 74.  Under this statute, a report of a judicial proceeding is entitled to absolute immunity, regardless of whether it repeats allegations or statements by participants in the proceeding that are alleged to be false, so long as the report constitutes a "fair and true" account of the proceeding.  *See Beary v. West Publ'g Co.*, 763 F.2d 66, 68 (2d Cir. 1985); *Glantz v. Cook United, Inc.*, 499 F. Supp. 710, 715 (E.D.N.Y. 1979); *Pelayo v. Celle*, 270 A.D.2d 469, 469, 705 N.Y.S.2d 282, 282 (2d Dep't 2000).  The privilege extends to reports on all aspects of judicial proceedings, including "any pleading [filed] in the course of a proceeding."  *Wenz v. Becker*, 948 F. Supp. 319, 323 (S.D.N.Y. 1996); *see also Uzamere v. Daily News, L.P.*, 34 Misc. 3d 1203(A), at *3, 946 N.Y.S.2d 69 (Table) (Sup. Ct. N.Y. Cnty. Nov. 10, 2011) (report on the contents of an affidavit covered by the privilege); *Komarov v. Advance Magazine Publishers, Inc.*, 180 Misc. 2d 658, 659, 691 N.Y.S.2d 298, 300 (Sup. Ct. N.Y. Cnty. 1999) (same).

Whether challenged statements are privileged under Section 74 is a question of law for this Court, at least where, as here, "all the relevant documents are before the court."  *Easton v. Pub. Citizens, Inc.*, 1991 WL 280688, at *2 (S.D.N.Y. Dec. 26, 1991); *see also Test Masters Educ. Servs., Inc. v. NYP Holdings, Inc.*, 603 F. Supp. 2d 584, 589 (S.D.N.Y. 2009) (granting motion to dismiss based on Section 74); *Southridge Capital Mgmt., LLC v. Lowry*, 2003 WL 68041, at *2 (S.D.N.Y. Jan. 7, 2003) (same).  To qualify as a "fair and true" report for purposes

10

of the statute, the publication "need not be a verbatim account or even a precisely accurate report" of the proceeding. *Freeze Right Refrig. & Air Cond. Servs., Inc. v. New York*, 101 A.D.2d 175, 183, 475 N.Y.S.2d 383, 389 (1st Dep't 1984). Rather, "it is enough that the *substance* of the article be substantially accurate." *Holy Spirit Ass'n for Unification of World Christianity v. N.Y. Times Co.*, 49 N.Y.2d 63, 67, 424 N.Y.S.2d 165, 167 (1979) (emphasis added). In making this determination, the privilege is to be liberally applied "so as to provide broad protection to news accounts of judicial or other official proceedings." *Becher v. Troy Publ'g Co.*, 183 A.D.2d 230, 233, 589 N.Y.S.2d 644, 646 (3d Dep't 1992).

Here, there can be no dispute that both *Affidavit* and *Judge* constitute "fair and true" reports of proceedings in the Boeheim lawsuit. Ms. Fine asserts that she was defamed by the following passage from *Affidavit*:

> In the affidavit, Bobby Davis, a former ball boy with the men's team, says he was present on several occasions with basketball players when he heard them speaking of having sex with Laurie Fine. Davis said players joked about it and it seemed to be an openly known fact that Laurie Fine has sex with basketball players.

Compl. ¶ 224. But that is an accurate summary of what Mr. Davis alleged in his affidavit, and, if anything, is much less explicit than what appears in the actual affidavit. *Compare* Compl. ¶ 224 *with* Siegel Decl. Ex. E ¶¶ 5, 8, 11, 14. The same is true with respect to *Judge*. Ms. Fine asserts that she was defamed by references in the article to: (1) "[s]alacious claims about the wife of an assistant Syracuse basketball coach"; (2) allegations, by lawyers for the plaintiffs, that her marriage was "dysfunctional"; and (3) the efforts by the plaintiffs to seek discovery into what "the university or . . . Boeheim knew about her alleged affairs with players and ball boys, among other information." Compl. ¶ 225. But those are accurate summaries both of the arguments made by counsel for Mr. Davis and Mr. Lang at the hearing, *see* Siegel Decl. Ex. F at 9:7-25, and of the allegations that Justice Singh ruled must be excluded from the Boeheim

11

lawsuit, allegations that, as Justice Singh noted in his opinion, included contentions that "for years, Bernie Fine's wife, Laurie Fine, had sexual relationships with basketball team players," that "Bernie Fine . . . knew that Laurie Fine was having inappropriate sexual relations with players and he never appeared to object to it" and that "it is difficult, if not impossible, to imagine that Boeheim did not hear or learn from the players themselves or others that Laurie Fine had such repeated inappropriate sexual relations." Siegel Decl. Ex. G at *1; *see also* Siegel Decl. Ex. E at ¶ 7 (alleging that Boeheim must have been aware of the "fundamentally dysfunctional relationships that the Fines maintained – Laurie Fine with young male basketball players and Bernie Fine with ball-boys").

In her Complaint, Ms. Fine does not, and cannot, allege that either article misrepresents the proceedings in the Boeheim lawsuit, or even that either fails to acknowledge both sides of the litigation, which, at any rate, is not necessary for a report to qualify as "fair and true." *See Cholowsky v. Civiletti*, 69 A.D.3d 110, 115, 887 N.Y.S.2d 592, 596 (2d Dep't 2009) ("no requirement that the publication report the plaintiff's side of the controversy"); *Glendora v. Gannett Suburban Newspapers*, 201 A.D.2d 620, 620, 608 N.Y.S.2d 239, 239 (2d Dep't 1994) (same). Ms. Fine alleges only that the statements collected in Statement 5 are "false because [she] never had a sexual relationship of any kind with any player on the Syracuse basketball team." Compl. ¶ 227. But that allegation is irrelevant. Under the privilege, "[t]he question is not whether or not the statement is 'true.' The question is whether it is a substantially accurate description of the claims made in the . . . proceeding . . . ." *Mulder v. Donaldson, Lufkin & Jenrette*, 161 Misc. 2d 698, 705, 611 N.Y.S.2d 1019, 1023 (N.Y. Sup. Ct. N.Y. Cnty. 1994); *see also Glantz*, 499 F. Supp. at 715 ("[E]ncompassed within the privilege is the right to publish a 'fair and true' report which contains information that is 'false' as a matter of fact.").

12

That Ms. Fine disputes the truth of the allegations Mr. Davis made in connection with the Boeheim lawsuit does not defeat ESPN's privilege to report on them.  Indeed, the purpose of the privilege is precisely to enable journalists to report on official actions and legal proceedings without fear that they will be held liable in defamation for repeating allegations or statements by participants in those actions that are alleged to be false.  *See Easton*, 1991 WL 280688, at *5; *Glantz*, 499 F. Supp. at 715 (same).  And, finally, while the Complaint generally casts aspersions on ESPN's motivations, such allegations are similarly irrelevant, as the privilege cannot be "defeated by . . . allegations of malice or bad faith."  *Pelayo*, 270 A.D.2d at 469, 705 N.Y.S.2d at 282.[8]

In short, because the publications grouped together in Statement 5 constitute "fair and true" reports of judicial proceedings under Section 74, they cannot give rise to any claim for libel.  Ms. Fine's claim based on Statement 5 should, accordingly, be dismissed.

## <u>CONCLUSION</u>

For the foregoing reasons, Ms. Fine's claim for libel based on Statement 5 should be dismissed with prejudice.

Dated: July 23, 2012                    LEVINE SULLIVAN KOCH & SCHULZ, LLP

By:    */s/ Nathan E. Siegel*
          Nathan E. Siegel

Nathan E. Siegel
Thomas Curley (*pro hac vice* admission pending)
Paul J. Safier (*pro hac vice* admission pending)
1899 L Street, N.W., Suite 200
Washington, DC 20036
(202) 508-1100
*Attorneys for Defendants*

---

[8] The Boeheim lawsuit and the specific charges at issue in Statement 5 were widely reported upon by other news media, none of whom has been sued for libel by Ms. Fine.