UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

LAURIE J. FINE,

                      Plaintiff,

           -against-                              5:12-CV-0836 (LEK/DEP)

ESPN, INC., a subsidiary of Walt Disney,
Inc.; MARK SCHWARZ, in his individual
capacity and as an employee of ESPN; and
ARTHUR BERKO, in his individual
capacity and as an employee of ESPN,

                      Defendants.

_____

## MEMORANDUM-DECISION and ORDER

## I.    INTRODUCTION

      This libel action returns to the Court on Defendants ESPN, Mark Schwarz, and Arthur

Berko's (collectively, "Defendants") Motion for judgment on the pleadings under Federal Rule of

Civil Procedure 12(c).  Dkt. No. 45 ("Motion"); see Dkt. Nos. 45-2 ("Memorandum"); 50

("Response"); 52 ("Reply").  Because the Court determines that it cannot now consider certain

materials upon which the Motion is based, the Motion is denied.

## II.    BACKGROUND

      The Court stated the basic facts of this case in a Memorandum-Decision and Order granting

Defendants' Motion under Federal Rule of Civil Procedure 12(b)(6) to dismiss part of Plaintiff

Laurie J. Fine's ("Plaintiff") claim as barred by New York Civil Rights Law § 74.  See Dkt. No. 21

("February Order") at 1-4, available at 2013 WL 528468.  The Court will discuss additional facts as

needed.  The thrust of Plaintiff's Complaint is that Defendants defamed her in two articles and an

accompanying video describing allegations that she and her husband, Bernie Fine ("Mr. Fine"),

sexually abused underage boys in their care.  See generally Dkt. Nos. 1 ("Complaint"); 45-14 ("First

Article"); 45-15 ("Second Article") (collectively with the First Article, the "Articles"); 45, Ex. C-5

("Video") (collectively with the Articles, the "Publications"); see also Dkt. No. 45-16 ("Video

Transcript").[1]  The Publications focus largely on an audiotape ("Tape") purportedly of a conversation

between Bobby Davis ("Davis") and Plaintiff regarding Mr. Fine's previous sexual abuse of Davis

and Plaintiff's awareness and facilitation of that abuse.  See generally Compl.; Publications.  Plaintiff

alleges that certain parts of the Publications defamed her: (1) the description and analysis of, and

selective quotations from, the Tape; (2) statements from Davis and Davis's babysitter Danielle

Roach ("Roach") regarding the Tape and Plaintiff's conduct; and (3) the title of the First Article

("Bernie Fine's wife had abuse concerns").  See Compl. ¶¶ 174-222, 232-41.[2]

       Defendants now seek judgment that the remainder of Plaintiff's claim is barred by § 74, or

that the Publications are not actionable because Defendants merely reported Plaintiff's own words

and were not grossly irresponsible in their reporting.  See generally Mem.; Reply.  Defendants'

arguments are premised almost exclusively on the following materials appended to their Motion: (1)

a digital copy of the Tape; (2) Syracuse Police Department ("SPD") reports; (3) a transcript of a

press conference given by Onondaga County District Attorney William Fitzpatrick ("Fitzpatrick");

and (4) a search warrant application filed by Secret Service Agent Alexander C. Brown ("Agent

_____

       [1] The Court may consider the Publications, because they are integral to Plaintiff's Complaint
and there is no dispute as to their accuracy or authenticity.  See generally Compl.; Resp.; see also
DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010)

       [2] Plaintiff asserts that these parts of the Publications defamed her by indicating that she: (1)
knew Mr. Fine was abusing Davis; (2) had a sexual relationship with Davis; (3) witnessed her
husband molest Davis but did not try to prevent him from doing so; (4) created a space in her home
where children could be molested in secret; and (5) betrayed Davis's trust.  See Compl. ¶¶ 174-222,
232-41.

Brown").  See Mem; Reply; Dkt. No. 45, Exs. C-2 ("Tape Copy"), A ("SPD Reports"), F

("Fitzpatrick Transcript"), B ("Warrant Application") (collectively with the SPD Reports and the

Fitzpatrick Transcript, the "Law Enforcement Records").

## III.   LEGAL STANDARD

Rule 12(c) motions for judgment on the pleadings are decided under the same standard as

Rule 12(b)(6) motions to dismiss for failure to state a claim upon which relief can be granted.

Hayden v. Paterson, 594 F.3d 150, 160 (2d Cir. 2010).  Thus, "[t]o survive a Rule 12(c) motion, the

complaint must contain sufficient factual matter to 'state a claim to relief that is plausible on its

face,'" Graziano v. Pataki, 689 F.3d 110, 114 (2d Cir. 2012) (quoting Bell Atl. Corp. v. Twombly,

550 U.S. 544, 570 (2007)), when the complaint's factual allegations are taken as true and all

reasonable inferences are drawn in a plaintiff's favor.  Kirkendall v. Halliburton, Inc., 707 F.3d 173,

178 (2d Cir. 2013).  The movant bears the burden of showing "'that no material issue of fact remains

to be resolved and that [it] is entitled to judgment as a matter of law.'"  Juster Assocs. v. City of

Rutland, 901 F.2d 266, 269 (2d Cir. 1990) (quoting 5 CHARLES ALAN WRIGHT & ARTHUR R.

MILLER, FEDERAL PRACTICE AND PROCEDURE § 1368 (1969)); accord 5C CHARLES ALAN WRIGHT &

ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1368 (3d ed. 2012).

## IV.   DISCUSSION

### A.  New York Civil Rights Law § 74

Section 74 of New York Civil Rights Law provides that "fair and true" reports of any

"official proceeding" are absolutely privileged.[3]  See Corp. Training Unlimited, Inc. v. Nat'l Broad.

---

[3] The full text of § 74 is as follows:

A civil action cannot be maintained against any person, firm or corporation, for

3

Co., 868 F. Supp. 501, 508 (E.D.N.Y. 1994). The parties dispute whether the challenged parts of the Publications reported on an official proceeding and, if they did, whether they were fair and true reports. See Mem. at 16-20; Reply at 5-10; Resp. at 3-16.

     *1. "Official Proceeding"*

Defendants assert that the Publications constitute reports on two official proceedings: (1) the SPD's investigation ("SPD Investigation") into the sexual abuse allegations; and (2) Agent Brown's application for a warrant to search the Fines' home. See Mem. at 16-20; Reply at 6-7. Plaintiff responds that the SPD Investigation was not an official proceeding. See Resp. at 4-7.

     a. SPD Investigation

Plaintiff argues that a police investigation does not constitute an official proceeding until an arrest is made or a request for judicial action is lodged. See Resp. at 4-5. But the weight of authority indicates otherwise. "New York courts have broadly construed the meaning of an official proceeding as used in Section 74." Test Masters Educ. Servs., Inc. v. NYP Holdings, Inc., 603 F. Supp. 2d 584, 588 (S.D.N.Y. 2009). "The test is whether the report concerns actions taken by a person officially empowered to do so." Sanders v. Long Island Newsday, No. CV 09-2393, 2010 WL 3419653, at *7 (E.D.N.Y. May 19, 2010) (quotation marks omitted); Test Masters, 603 F. Supp. 2d at 588 (quotation marks omitted); Freeze Right Refrigeration & Air Conditioning Servs., Inc. v. New York, 475 N.Y.S.2d 383, 388 (App. Div. 1984) (quotation marks omitted). Investigations of various types

---

the publication of a fair and true report of any judicial proceeding, legislative proceeding or other official proceeding, or for any heading of the report which is a fair and true headnote of the statement published.

     This section does not apply to a libel contained in any other matter added by any person concerned in the publication; or in the report of anything said or done at the time and place of such a proceeding which was not a part thereof.

have been found to be official proceedings under § 74 and its predecessors.  See, e.g., Test Masters,

603 F. Supp. 2d 584 (New York Consumer Protection Board investigation regarding consumer

complaints); Easton v. Public Citizens, Inc., No. 91 Civ. 1639, 1991 WL 280688, at *1 (S.D.N.Y.

Dec. 26, 1991) (New York State Commission on Quality of Care for the Mentally Disabled

investigation regarding the finances of a Brooklyn psychiatric facility), aff'd, 969 F.2d 1043 (2d Cir.

1992); Muscarella v. Berkshire Hathaway, Inc., 721 N.Y.S.2d 432, 433 (App. Div. 2000) (federal

agency audit); Freeze Right, 475 N.Y.S.2d 383 (New York City Department of Consumer Affairs

investigation into the practices of air conditioner repair shops); Baumann v. Newspaper Enters., 60

N.Y.S.2d 185 (App. Div. 1946) (District Attorney investigation); Ibrahim v. Fox Television Stations,

Inc, No. 109370, 2011 WL 3198879, at *2 (N.Y. Sup. Ct. July 21, 2011) (UN investigation into

allegations of employee misconduct); Farrell v. N.Y. Evening Post, Inc., 3 N.Y.S.2d 1018 (Sup. Ct.

1938) (internal governmental investigation of the Civil Works Administration).[4]

Although many of the investigations at issue did culminate in formal action, the

investigations themselves, independent of any culminating action, were explicitly deemed to

constitute official proceedings.  See Test Masters, 603 F. Supp. 2d at 589 ("The official proceeding

in this case was the . . . *investigation*." (emphasis added)); Freeze Right, 475 N.Y.S.2d at 388 (noting

---

[4] Plaintiff correctly notes that a few older Appellate Division cases held that police investigations are not "official proceedings" under § 74's predecessors.  See Nunnally v. Press Pub. Co., 96 N.Y.S. 1042, 1044 (App. Div. 1905) ("[M]ere investigations of a detective character conducted by persons connected with the coroner's office and by members of a municipal police force do not constitute such judicial or other public and official proceedings."); Kelley v. Hearst Corp., 157 N.Y.S.2d 498, 502 (App. Div. 1956) ("It would be difficult to apply the term 'proceeding' . . . to merely informal statements or assertions by public officers concerning their investigations."). But these decisions run contrary to substantial recent authority applying the broad "official empowerment" test and deeming a variety of investigations official proceedings.

that "the announcement of an investigation by a public agency, made before the formal investigation has begun"; "an ongoing investigation," and a "completed investigation" are all official proceedings); Ibrahim, 2011 WL 3198879 , at *2 ("[T]he court disagrees with plaintiff's argument that the investigation . . . did not constitute an official proceeding, but only the . . . hearing did."); Farrell, 3 N.Y.S.2d at 1022 ("The investigation . . . was a public and official proceeding. It was action taken by a person officially empowered to do so."); Pinero v. NYP Holdings, Inc., No. 117438, 2007 WL 2781843, at *6 (N.Y. Sup. Ct. Sept. 17, 2007) ("[T]he statements concerning the Investigation were absolutely privileged under the New York Civil Rights Law § 74.").

"Given the range of investigatory proceedings that have been held to be official proceedings for purposes of Section 74, there can be no doubt that the [SPD] [I]nvestigation . . . constitutes an official proceeding." Test Masters, 603 F. Supp. 2d at 588. The SPD is "officially empowered" to investigate crimes. See Syracuse Charter Ch. 14; Guido v. City of Schenectady, 404 F.2d 728, 744 n.13 (2d Cir. 1968) (Waterman, J., dissenting) ("The duty to investigate crime is a duty of the police department, historically its main duty."). And § 74's purpose, "protect[ing] the right of free access to information concerning the workings of our public institutions," Gurda v. Orange Cnty. Publications Div. of Ottaway Newspapers, 439 N.Y.S.2d 417, 423 (App. Div. 1981), rev'd on other grounds, 436 N.E.2d 1326 (N.Y. 1982), would undoubtedly be furthered by its application to the SPD Investigation; surely the public has as much interest in information regarding police investigations of the sexual abuse of children as it does in, e.g., a malfunctioning-air-conditioner agency investigation, see Freeze Right, 475 N.Y.S.2d 383, or the investigation of a UN employee for mistreating a dog under his control, see Ibrahim, 2011 WL 3198879, at *2. The Court therefore finds that the SPD Investigation was, from its commencement, an official proceeding under § 74.

b. Search Warrant

Defendants also argue that the application for the search warrant constitutes an official proceeding. See Reply at 6-7. Plaintiff does not dispute this. See Resp. at 1 (acknowledging that § 74 covers, *inter alia*, "search warrant applications."); see also Law Firm of Daniel P. Foster, P.C. v. Turner Broadcasting System, Inc., 844 F.2d 955, 961 (2d Cir. 1988) (finding report concerning "the execution of a warrant issued upon the authorization of a federal judge" privileged under § 74). The Court therefore finds that the application for the search warrant constitutes an official proceeding.[5]

## 2. Report "of" an Official Proceeding

Section 74 applies only where the challenged report is "of" a proceeding. See also Cholowsky v. Civiletti, 887 N.Y.S.2d 592, 596 (App. Div. 2009) ("[I]t is . . . incumbent on the party asserting the privilege to establish that the statements at issue reported *on* a . . . proceeding." (quotation marks omitted and emphasis added)). An overlap between the subject matter of the report and the subject matter of a proceeding does not suffice; the ordinary viewer or reader must be able to determine from the publication itself that the publication is reporting on the proceeding. See Wenz v. Becker, 948 F. Supp. 319, 323 (S.D.N.Y. 1996) ("If the context in which the statements are made make[s] it impossible for the ordinary viewer to determine whether defendant was reporting [on a proceeding], the absolute statutory privilege does not attach." (quotation marks omitted)); Corp. Training, 868 F. Supp. at 509 (finding report unprotected where "[t]he ordinary viewer . . . would not have been under the impression that he was being presented with a report of the . . . proceedings"); Cholowsky, 887 N.Y.S.2d at 596 ("If the publication does not *purport to* comment on a . . . proceeding, Civil Rights Law § 74 is inapplicable." (emphasis added)). Thus, there must be some

---

[5] TheWarrant Application also likely constitutes a "judicial proceeding" under § 74.

perceptible "connection between the challenged report and the . . . proceeding." Corp. Training, 868 F. Supp. at 509; see also Wenz, 948 F. Supp. at 322 ("[T]he privilege applies only where . . . the allegedly defamatory statement is connected to a . . . proceeding.").

How "direct" this connection must be has not been clearly defined. Corp. Training, 868 F. Supp. at 509. Quotations from, and summaries of, documents or other material that the report indicates are part of a proceeding are indisputably statements "of" that proceeding. See Aguirre v. Best Care Agency, Inc., No. 10-CV-5914, 2013 WL 4446925, at *23 (E.D.N.Y. Aug. 16, 2013); Fuji Photo Film U.S.A., Inc. v. McNulty, 669 F. Supp. 2d 405, 415 (S.D.N.Y. 2009); McRedmond v. Sutton Place Rest. and Bar, Inc., 851 N.Y.S.2d 478, 480 (App. Div. 2008) (holding that § 74 applied to reports that "essentially summarize[d] or restate[d] the allegations of the complaint"). And, in light of the broad construction of § 74, see Feb. Order at 6, reports that bear a more attenuated relationship to a proceeding have been deemed sufficiently connected. See, e.g., Gonzalez v. Gray, 69 F. Supp. 2d 561 (S.D.N.Y. 1999) (finding that interview of widower, in which he stated that his wife's doctor had been a "quack" who "had killed her . . . had lied to her" and that "[a]ll of this hope he was pumping her full of was just slime," constituted a report of claims in the wrongful death complaint mentioned elsewhere in the television segment); McNally v. Yarnall, 764 F. Supp. 853, 856 (S.D.N.Y. 1991) (finding that statement by attorney that "relate[d] directly to a *possible* position" his clients might take in pending litigation was sufficiently related to that proceeding. (emphasis added)). Statements or allegations that go beyond matters in a proceeding have been deemed privileged as a "background" report of that proceeding. See Daniel P. Foster, 844 F.2d at 961 n.11 (finding that, where official proceeding identified only the address of an office, newspaper article's identification of the proprietor of that address was also privileged); El Greco Leather Prods.

8

Co., Inc. v. Shoe World, Inc., 623 F. Supp. 1038 (E.D.N.Y. 1985) (finding that trade publication's "further allegations" beyond allegations in a court complaint "constitute[d] background to the misconduct attributed . . . in the complaint." (quotation marks omitted)); Fishof v. Abady, 720 N.Y.S.2d 505, 505 (App. Div. 2001) (finding that the privilege "extends to the release of background material with regard to the [proceeding]"); Ford v. Levinson, 454 N.Y.S.2d 846, 848 (App. Div. 1982) (finding that, although attorney's statement in newspaper article did "not clearly and directly fall within any of the allegations of the complaint," the statement was privileged because it constituted "background to the misconduct attributed . . . in the complaint rather than a separate and independently defamatory accusation"); Hanft v. Heller, 316 N.Y.S.2d 255, 258 (Sup. Ct. 1970) (finding that report's inclusion of plaintiff's name in summary of a judicial opinion that had omitted name did not deprive the summary of the protection of the statutory privilege).

However, a report's mere mention of an official proceeding does not automatically extend the privilege to an entire publication; the privilege may apply to some portions of a report and not others. See. e.g., Easton, 1991 WL 280688, at *3-7; Freeze Right, 475 N.Y.S.2d at 388-89 (finding that first two paragraphs of newspaper article were protected by privilege but another section was not). If context indicates that a challenged portion of a publication focuses exclusively on underlying events, rather than an official proceeding relating to those events, that portion is insufficiently connected to the proceeding to constitute a report of that proceeding. See Corp. Training, 868 F. Supp. at 509 (where television story regarding incident was "told in a narrative fashion" through "a succession of interviews with participants in the incident," and only mentioned an official proceeding regarding that incident "in passing" at the end of the story, it was not a report of an official proceeding because "[t]he ordinary viewer . . . would not have been under the impression that he was being presented

9

with a report of the . . . proceedings."). Furthermore, "[t]he privilege does not extend to commentary

on the proceeding or to additional facts not established in the proceedings." Easton, 1991 WL

280688, at *3; see also id. (finding that statement regarding the "conclusion to be drawn" from the

proceeding constituted unprotected commentary); Karp v. Hill & Knowlton, Inc., 631 F. Supp. 360,

363 (S.D.N.Y. 1986) ("The Civil Rights Law does not protect[] bald-faced commentary.").

Here, Defendants argue that the putatively defamatory parts of Publications constitute a

report of official proceedings because they describe: (1) the Tape submitted to the SPD; (2) the

SPD's investigative conclusions regarding the Tape and Plaintiff's conduct: (3) Davis's and Roach's

statements to the SPD; and (4) the Warrant Application. See Mem. at 1-20; Reply at 6-10. The

Court finds that, while many of the challenged parts of the Publications likely constitute reports of

the SPD Investigation because they describe the Tape submitted to the SPD, none are reports of

investigative conclusions regarding the Tape or Plaintiff's conduct, witness statements given to the

SPD, or the Warrant Application.

### a. The Tape

Many of the challenged portions of the Publication constitute reports of an official

proceeding, because they quote from or describe the Tape, see, e.g., First Article at 2[6] ("On the tape,

Davis repeatedly asked Laurie Fine what she knew of the alleged molestation."); id. ("'Do you think

I'm the only one that he's ever done that to?' Davis asked"); Second Article at 2[7], which the Articles

explicitly describe as having been submitted to the SPD as part of its investigation. See, e.g., First

Article at 2 ("Davis shared the tape with Syracuse police, one of several law enforcement agencies

---

[6] The pagination corresponds to the page numbers assigned by ECF.

[7] The pagination corresponds to the page numbers assigned by ECF.

who have opened an investigation into the case."); Second Article. at 1 (noting the police "investigation of child molestation allegations against [Mr.] Fine"), 2 (describing the Tape and noting that the tape had been given to the SPD). As noted *supra*, quotations and summaries of materials that a publication explicitly identifies as a part of an official proceeding are reports "of" that proceeding. Other allegedly defamatory portions of the Publications arguably constitute protected background information regarding the Tape.[8] See, e.g., First Article at 3 (noting that Davis had stated, in an interview, that the sexual relationship to which Plaintiff purportedly admits on the Tape happened when Davis was 18 and in high school).

> b. Investigative Conclusions Regarding the Tape and Plaintiff's Conduct

However, while the Publications describe the Tape, they do not, as Defendants implicitly contend, report on the SPD's conclusions regarding the Tape or Plaintiff's conduct. See Mem. at 19 ("[L]aw enforcement officials understood her statements [on the Tape] exactly the same way ESPN presented them which is what matters for purposes of applying the privilege."). Indeed, the Second Article emphasizes that it is *not* reporting on the SPD's investigative conclusions. See Second Article at 4 ("[T]he [SPD] . . . is *not* commenting on any aspect of the Fine investigation at this time." (emphasis added)). None of the Publications mention any determination by the SPD regarding the Tape or Plaintiff's conduct.[9] While the Second Article notes that Fitzpatrick called Mr.

---

[8] Because, as discussed *infra*, the Court cannot determine whether any allegedly defamatory part of the Publications is a fair and true report of the SPD Investigation, the Court need not decide, and refrains from deciding, precisely which Publication parts are "of, " and which are not "of," the SPD Investigation. This section serves to illustrate merely that at least some of the statements are of the SPD Investigation by virtue of their discussion of the Tape.

[9] The Video does not even mention the SPD Investigation. Like the Articles, it cannot be a report of the SPD's investigatory conclusions. Nevertheless, the Court refrains from deciding whether the Video's description of the Tape may constitute a report "of" the SPD Investigation because, although the Video does not mention the SPD Investigation or the provision of the Tape to

Fine's firing by Syracuse University "'a validation of Bobby Davis and an appropriate reaction by the University,'" it does not provide any commentary from Fitzpatrick on Plaintiff's conduct or the Tape; indeed, the Second Article neither indicates that Fitzpatrick had even heard the Tape nor connects Fitzpatrick's comment to Plaintiff in any way. Second Article at 4. Thus, the challenged portions of the Second Article—all of which pertain to the Tape and/or Plaintiff's conduct—are not "of" Fitzpatrick's statement or implied conclusions.

The Publications make clear that their descriptions of Plaintiff's conduct, as well as their descriptions of the content and meaning of the Tape, were made by Defendants themselves or non-law-enforcement persons Defendants interviewed, *not* the SPD. See, e.g., First Article at 2 ("ESPN hired a voice-recognition expert who said the tape matches the voice of Laurie Fine"), id. ("'Laurie was a person I talked to a lot about this situation as I got older,' Davis said *in an interview with ESPN*. 'And she was there a lot of the times, and had seen a lot of the things that were going on when Bernie would come down to the basement in his house at night.'" (emphasis added)), id. at 3 ("[A]t another point in the call, Fine says of her husband . . . ."); Second Article at 5 ("Davis also acknowledged *in the ESPN interview* that he and Laurie Fine had a sexual relationship when he was 18, and that he eventually told Bernie fine about it." (emphasis added)); Video Tr. at 5[10] (indicating that Roach listened to the Tape after Davis first recorded it and had re-listened to it, and then presenting Roach saying "[t]his tape *tells me* that Laurie knew and watched it go on knowingly, that it was going on in her home for a long time." (emphasis added)).[11] Therefore, although some of the

---

the SPD, the accompanying Articles do.

[10] The pagination corresponds to the page numbers assigned by ECF.

[11] The parties dispute the significance of ESPN's reliance on non-SPD sources. See Mem. at 11-13; Reply at 7-9. The Court finds this irrelevant. The issue is not that ESPN quoted non-SPD

challenged portions of the Publications may constitute reports of the SPD Investigation because they describe the Tape, none constitute reports of the SPD investigation by virtue of describing the SPD's conclusions regarding the Tape or Plaintiff's conduct.

### c. Witness Statements

Defendants also seemingly argue that the portions of the Publications quoting Roach and Davis or describing their opinions constitute reports of Roach and Davis's statements to the SPD. See Mem. at 17 ("ESPN . . . report[ed] on the substance of the allegations made in the official investigation."); id. at 19 ("The allegations of Davis and Roach [in the Publications] . . . are also not materially different than what they had previously told the police . . . and thus are also protected by the privilege."). But again, the Publications never indicated that Roach or Davis spoke to the SPD, let alone that they made statements to the SPD substantially similar to the statements appearing in the Publications. An ordinary viewer of the Video would not understand that, in presenting Roach's statement that "[t]his is about a kid who was abused and adults who didn't help," Defendants were describing a statement Roach gave to the SPD. Video Tr. at 5.[12] Thus, the Publications are not reports of Roach's and Davis's statements to the SPD.

### d. Warrant Application

Defendants also implicitly argue that some of the allegedly defamatory portions of the Publications constitute reports of the Warrant Application. See Mem. at 19 (noting that "law

_____

sources; rather, the issue is that those non-SPD sources say nothing about the SPD's conclusions.

[12] The Second Article itself presents an example of a report of a statement given to the SPD. In a portion of the Second Article unchallenged by Plaintiff, Defendants quote Zach Tomaselli, another accuser of Mr. Fine's, as stating "*I told them (police)* that Laurie was standing right there when Bernie asked me to sleep in a bed. Laurie knew all about it." Second Article at 4 (emphasis added).

enforcement officials understood her statements exactly the same way ESPN presented them, which is what matters for purposes of applying the privilege" and citing to the Warrant Application), 5 (extensively quoting the Warrant Application's description of the Tape), 12 (noting that "the excerpts ESPN selected from the Tape were largely the same excerpts that Special Agent Brown quoted in his search warrant application."). Again, the Publications makes no mention of the Warrant Application, let alone its description and analysis of the Tape and Plaintiff's conduct. See generally Publications.[13] Thus, the Publications do not constitute reports of the Warrant Application.[14]

e. Conclusion

The challenged parts of Publications may be reports "of" an official proceeding only because they quote and describe, and provide background information regarding, the Tape. They do not describe the SPD's investigatory conclusions, Davis's and Roach's statements to the SPD, or the Warrant Application.

<em>3. Fair and True Report</em>

To be protected under § 74, a report of a proceeding must be "fair and true." The New York Court of Appeals has deemed this requirement tantamount to "substantial[] accura[cy]." Holy Spirit

---

[13] The Second Article does note that "federal authorities carried out a search at . . . Fine's suburban Syracuse home." A home search is often conducted without a warrant, see Fernandez v. California, 134 S.Ct. 1126, 1132 ( 2014) (discussing warrantless home searches), and thus this passage does not necessarily indicate to an ordinary reader that a warrant was applied for. But even if it did, see id., ("[A] warrant is generally required for a search of a home."), Defendants contend that the allegedly defamatory statements are "of" the substance of the Warrant Application, not its mere existence. The challenged portions of the Publications cannot be construed as a report of the mere fact that a search warrant was applied for.

[14] Some of Roach's and Davis's statements may constitute reports of the SPD Investigation by virtue of their description of the Tape.

Ass'n for Unification of World Christianity v. New York Times Co., 399 N.E.2d 1185, 1187 (N.Y. 1979). Defendants argue that substantial accuracy *vel non* may be determined by comparing the putatively defamatory parts of the Publications with the Tape Copy and the Law Enforcement Records. The Court finds, however, that it cannot consider these materials at this stage and therefore cannot determine whether the Publications were "fair and true."

### a. Tape Copy

"In ruling on a 12(c) motion, a district court generally must confine itself to the four corners of the complaint and look only to the allegations contained therein." Korova Milk Bar of White Plains, Inc. v. PRE Properties, LLC, No. 11 Civ. 3327, 2013 WL 417406, at *6 (S.D.N.Y. Feb. 4, 2013). However, "[c]onsideration of materials outside the complaint is not entirely foreclosed." Faulkner v. Beer, 463 F.3d 130, 134 (2d Cir. 2006). A court may consider other material "where the pleadings rely 'heavily upon its terms and effect, thereby rendering [it] integral to the pleadings.'" Daniels v. Comm'r of Soc. Sec., 456 F. App'x 40, 41 (2d Cir. 2012) (quoting DiFolco v. MSNBC Cable LLC, 622 F.3d 104, 111 (2d Cir. 2010)) (brackets omitted).[15] The reliance must be substantial. See Roth v. Jennings, 489 F.3d 499, 509 (2d Cir. 2007) ("[A] document upon which the complaint *solely* relies and which is integral to the complaint may be considered by the court."

---

[15] "In deciding a motion under Rule 12(c), the district court may [also] consider . . . documents attached to the pleadings as exhibits or incorporated by reference." Daniels, 456 F. App'x at 41 (citing see Samuels v. Air Transp. Local 504, 992 F.2d 12, 15 (2d Cir. 1993)). Defendants do not argue that the Tape Copy falls in either category, and it does not: it was not attached to the pleadings and, although it is referenced in the Complaint, it was not incorporated by reference. See Sahu v. Union Carbide Corp., 548 F.3d 59, 67-68 (2d Cir. 2008); Korova, 2013 WL 417406, at *6 n.3 ("Limited quotations or references to a document in a complaint are insufficient to deem an entire document incorporated into the complaint"); BLACK'S LAW DICTIONARY (9th ed. 2009) (defining "incorporation by reference as "[a] method of making a secondary document part of a primary document by including in the primary document a statement that the secondary document should be treated as if it were contained within the primary one").

(brackets and quotation marks omitted and emphasis in original)); <u>Korova</u>, 2013 WL 417406, at *6 n.3 ("In order for the contents of a document to be deemed integral to the complaint, they must be deemed necessary to the plaintiff's statement of a claim under Rule 8.").

"However, 'even if a document is 'integral' to the complaint, it must be clear on the record that *no* dispute exists regarding the authenticity or accuracy of the document.'" <u>DiFolco v. MSNBC Cable L.L.C.</u>, 622 F.3d 104, 111 (2d Cir. 2010) (quoting <u>Faulkner v. Beer</u>, 463 F.3d 130, 134 (2d Cir. 2006)) (emphasis added). The "no dispute" requirement has been interpreted strictly: even implicit, conclusory, contradictory, or implausible objections to the authenticity or accuracy of a document render consideration impermissible. <u>See, e.g.</u>, <u>Barberan v. Nationpoint</u>, 706 F. Supp. 2d 408, 415-16 & n.4 (S.D.N.Y. 2010) (refusing to consider documents even though plaintiff's authenticity objections were "less than genuine" and of "questionable viability"); <u>Cram v. Pepsico Exec. Income Deferral Comp. Program</u>, No. 08-CV-10627, 2010 WL 4877275, at *4 (S.D.N.Y. Aug. 9, 2010) (refusing to consider document attached as an exhibit to the complaint, even though complaint alleged that the document was authentic, where plaintiff subsequently "seemingly dispute[d] the authenticity" of his exhibit); <u>Brown v. DeFrank</u>, No. 06-CV-2235, 2006 WL 3313821, at *22 (S.D.N.Y. Nov. 15, 2006) (finding that court could not consider exhibits attached to plaintiff's complaint because he challenged the authenticity of some); <u>see also</u> <u>Cooper v. Pickett</u>, 137 F.3d 616, 622-23 (9th Cir. 1997) (affirming district court's refusal to consider call transcripts attached to motion to dismiss where, although complaint discussed calls, plaintiffs disputed the accuracy and authenticity of the transcripts); <u>Crispin v. BAC Home Loans Servicing, LP</u>, No. 11-CV-3752, 011 WL 6294319, at *4 (E.D.N.C. Dec. 15, 2011) (refusing to consider document where plaintiff "call[ed] into question [its] authenticity").

Defendants argue that the Tape Copy may be considered because it is integral to the Complaint. See Mem. at 2 n.1. The Complaint's extensive allegation that the Publications misinterpreted the Tape arguably render the Tape Copy—as a purportedly accurate copy of the Tape, see Dkt. No. 45-3 ¶ 4.b—integral to the Complaint. See, e.g., Compl. ¶ 184 (arguing that the Second Article's statement that the Tape indicates that Plaintiff acknowledged alleged sexual abuse is false because it relies on "selective statements taken out of context from the . . . [T]ape"). But Plaintiff has disputed both the authenticity and accuracy of the Tape (and therefore, transitively, of the Tape Copy).[16] See Compl. ¶¶ 79 ("Davis also gave Defendants an *admittedly doctored . . . and entirely speculative tape*, which Davis *purported to be a reco[r]ding of a telephone conversation between he and Laurie* in 2002." (emphases added)), 84 ("ESPN published a . . . recording that it, ESPN, purports to be the entire taped conversation between Davis and Plaintiff from 2002."), 88 ("Defendants refused to publish this *admittedly unreliable* tape."), 93 ("[T]he tape was unauthenticated"), 96 (referring to the "admittedly doctored . . . and entirely speculative tape *purporting to be of Laurie Fine* in 2003" (emphasis added)), 141 (referring to the "recording that Davis claimed to be of a 2002 telephone conversation between he and Laurie"); Resp. at 1 (referring to Plaintiff's "alleged 'own words'"). While Plaintiff's exact contentions are not altogether clear, she appears to argue that: (1) the Tape may not be a recording of Plaintiff's voice; (2) even if the Tape is a recording of Plaintiff's voice, it is inaccurate because it has been altered or is insufficiently audible to reflect Plaintiff's actual words.[17] While some of her objections appear conclusory and ill-

---

[16] Plaintiff clearly asserts that the Tape is an inaccurate and inauthentic recording of a purported conversation she had with Davis. It is unclear whether she also asserts that the Tape Copy is an inauthentic and inaccurate recording of the Tape.

[17] Although authenticity and accuracy are somewhat fluid and overlapping concepts, with respect to a recording, authenticity generally speaks to whether the recording is of the person(s) of

17

founded—particularly in light of Plaintiff's unique positioning to know both the sound of her voice and the nature and existence *vel non* of conversations she has had—the Court may consider the Tape Copy only if there are "no disputes" regarding its authenticity and accuracy. Because there are such disputes, the Court may not consider the Tape Copy.

### b. Law Enforcement Records

Defendants argue that the Court may consider the SPD Reports and Warrant Application as public records. See Mem. at 2 n.1. In deciding a motion to dismiss, a court may take judicial notice of public records, including the type of records Defendants offer. See Roth v. Jennings, 489 F.3d 499, 509 (2d Cir. 2007); Liang v. City of New York, No. 10-CV-3089, 2013 WL 5366394, at *5 (E.D.N.Y. Sept. 24, 2013) (taking judicial notice of police reports and court filings); Wims v. N.Y.C. Police Dep't, No. 10-Civ-6128, 2011 WL 2946369, at *2 (S.D.N.Y. July 20, 2011) (finding that a district court may take judicial notice of "arrest reports" when deciding a 12(b)(6) motion). However, a court may take judicial notice of such documents "only to establish their existence and legal effect, or to determine what statements [they] contained . . . *not for the truth of the matters asserted*." Liang, 2013 WL 5366394, at *5 (quotations marks omitted and ellipsis in original); see also Roth 489 F.3d at 509 ("If the court takes judicial notice, it does so in order to determine what statements they contained—but . . . not for the truth of the matters asserted."); Korova, 2013 WL 417406, at *6

---

whom it purports to be of; accuracy speaks to the degree of correlation between the recording and the actual conversation. See United States. v. Tropeano, 252 F.3d 653, 661 (2d. Cir. 2001) (finding tape properly authenticated where participants in recorded conversation "identified the voices on the tapes"); FED. R. EVID. 901(b)(5) (noting that sufficient authentication of a recording may include, "[a]n opinion identifying a person's voice . . . based on hearing the voice at any time under circumstances that connect it with the alleged speaker"); United States v. Singleton, 455 F. App'x 914, 916 (11th Cir. 2012) (noting that, to be admissible, a recording must be an "accurate reproduction of relevant sounds"); United States v. Brown, 688 F.2d 1112, 1116 (7th Cir. 1982) ("[A]uthentication relates only to whether the documents originate from [their alleged source]; it is not synonymous to vouching for the accuracy of the information contained in those records.").

("[T]he Court may consider statements set forth in documents of which judicial notice may be taken, but . . . solely to establish the *existenc*e of the opinions or assertions contained therein, *rather than for the truth of the matters asserted*. (citations omitted and emphases added)). Defendants also ask the Court to consider the Fitzpatrick Transcript because it constitutes a document integral to the Complaint. See Mem. at 2 n.1. While, as noted *supra*, integral documents may be considered in deciding a motion for judgment on the pleadings, they too may not be considered for the truth of the matters asserted. See In re Lehman Bros. Securities and ERISA Litigation, 903 F. Supp.2d 152, 168-69 (S.D.N.Y. 2012) (citing Staehr v. Hartford Fin. Servs. Group, Inc., 547 F.3d 406, 424-25 (2d Cir. 2008)).[18]

As discussed *supra*, the challenged parts of the Publications are "of" the SPD investigation only through quoting, describing, and providing background information regarding the Tape. Thus, to determine whether the challenged parts of the Publications are "fair and true" reports, the Court would have determine whether those quotations, descriptions, and provisions of background material are substantially accurate. Consideration of the Law Enforcement Records is impermissible for this purpose, because such consideration would be for the truth of the matters asserted; *i.e.*, the Court would have to find the Tape description and analysis in these documents true, and then determine whether the Publications made the same assertions and were therefore also true.

If the Publications had reported on the SPD's, Agent Brown's, or Fitzpatrick's descriptions and conclusions regarding the Tape, or on Davis's and Roach's statements to the SPD, consideration

---

[18] The Court also notes that the Complaint's single mention of Fitzpatrick, see Compl. ¶ 164 ("[S]hortly after VanHooser accused Bernie of sexual abuse Onondaga County District Attorney William Fitzpatrick made clear that VanHooser's claims were not credible"), is likely insufficient to render the Fitzpatrick Transcript "integral"—particularly because Fitzpatrick's press conference is not explicitly mentioned and this allegation has little, if any, bearing on Plaintiff's claim. See Korova, 2013 WL 417406, at *6-7 & nn. 3-6.

of the Law Enforcement Records would be permissible: the Court would examine them in order to determine whether the reported-on Tape descriptions or witness statements were made, *not* whether those determinations and conclusions were true. As noted *supra,* the Publications did not do so. Consideration of the Law Enforcement Records is therefore impermissible.

### c. Conclusion

Because the Court cannot consider the Tape or Law Enforcement Records, it cannot determine whether the challenged portions of the Publications were fair and true reports of the SPD Investigation. Defendants' Motion, to the extent it seeks dismissal on the basis of § 74, is therefore denied.

### B. "Own Words" Defense

"Truth is an absolute defense to an action based on defamation." Goldberg v. Levine, 949 N.Y.S.2d 692, 693 (App. Div. 2012). Defendants argue that a comparison of the Tape Copy and Law Enforcement Records to the challenged portions of the Publications indicates that the latter truthfully describe Plaintiff's words. See Mem. at 21. For the same reasons discussed *supra*, the Court cannot now make that comparison. Defendants' Motion, to the extent it seeks dismissal based on the truth of the challenged parts of its Publications, is therefore denied.

### C. Gross Irresponsibility

Defendants argue that, even if the Publications were not truthful, Defendants did not act in a grossly irresponsible manner in publishing them. See Mem. at 22. "[W]here the content of the article is arguably within the sphere of legitimate public concern, which is reasonably related to matters warranting public exposition, the party defamed may recover; however, to warrant such recovery he must establish, by a preponderance of the evidence, that the publisher acted in a *grossly irresponsible*

*manner* without due consideration for the standards of information gathering and dissemination ordinarily followed by responsible parties." Chapadeau v. Utica Observer-Dispatch, 341 N.E.2d 569, 571 (N.Y. 1975) (emphasis added). Both parties agree that, at least with respect to determination of the Motion, the gross irresponsibility standard governs. See Resp. at 18-19; Mem. at 22 n.9.

In determining gross irresponsibility, New York courts consider, *inter alia*, "whether sound journalistic practices were followed in preparing the defamatory article, whether normal procedures were followed and whether an editor reviewed the copy, whether there was any reason to doubt the accuracy of the source relied upon so as to produce a duty to make further inquiry to verify the information, and whether the truth was easily accessible." Dalbec v. Gentleman's Companion, Inc., 828 F.2d 921, 924-25 (2d Cir. 1987) (ellipses omitted).

Defendants advance two arguments regarding their lack of gross irresponsibility. First, they contend that they cannot have been grossly irresponsible because they relied on the Tape—a putatively reliable "source" regarding Plaintiff's words. See Mem. At 24 ("[T]he principal source ESPN used to verify what is reported about her was one whose reliability she cannot challenge—*i.e.*, herself."). But, as noted *supra*, the Complaint alleges that the Tape was not a reliable source, and that Defendants knew this to be so. Factual disputes regarding Defendants' perception of the Tape's reliability cannot be resolved at this stage.

Second, Defendants argue that they cannot have been grossly irresponsible in describing the Tape or Plaintiff's conduct because, as reflected in the Law Enforcement Records, the SPD, Fitzpatrick, and Agent Brown drew the same conclusions as the Publications. See id. But the gross-irresponsibility inquiry focuses on the defendant's processes and subjective state of mind in preparing

and deciding to publish a report, *not* the veracity of the report.[19]  See Dalbec, 828 F.2d at 924-25;

Chapadeau, 341 N.E.2d at 571.  Neither the Complaint nor the Law Enforcement Records indicate

that Defendants reached their conclusions using processes and information identical to the processes

and information used by the SPD, Fitzpatrick, and Agent Brown.[20]  Moreover, even if such a showing

were made, it would not necessarily avail Defendants: law enforcement is capable of gross

irresponsibility.  See, e.g., People v. Wise, 752 N.Y.S.2d 837, 850 (Sup. Ct. 2002) (vacating

convictions of Central Park Five).  Defendants' Motion, to the extent it seeks dismissal based on a

lack of gross irresponsibility, is therefore denied.

## V.    CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that Defendants' Motion (Dkt. No. 45) for judgment on the pleadings is

**DENIED**; and it is further

**ORDERED**, that the Clerk serve a copy of this Memorandum-Decision and Order on all

---

[19] To the extent Mott v. Anheuser-Busch, Inc., 910 F. Supp. 868 (N.D.N.Y. 1995) suggests otherwise, the Court finds this to be a departure from the weight of authority holding that process, not conclusions, determine gross irresponsibility *vel non*.  Moreover, even Mott suggests that a law enforcement conclusion that accords with a report independently reaching the same conclusion is not dispositive as to the lack of gross irresponsibility of that report  See id. at 875-76.

[20] For this reason, the Court disagrees with Defendants' contention that, because it is not grossly irresponsible to report information obtained from law enforcement records, it is necessarily not grossly irresponsible to report independently-reached information that happens to accord with information in a law enforcement record.  See Mem. at 25.  Even where a report relying on law-enforcement-provided information and a report developed independently of law enforcement reach the same conclusions, the processes used are necessarily different.  Second, Defendants' premise is overstated: it may be grossly irresponsible to rely on law enforcement conclusions where the reporter "is aware of the probable falsity of the reports or has some reason to doubt their accuracy."  Mitchell v. Herald, 529 N.Y.S.2d 602, 605 ( App. Div. 1988).  The Complaint is replete with allegations that Defendants had such awareness and reason to doubt, see generally Compl., and thus, even if Defendants had relied upon law enforcement sources, they would not necessarily be entitled to judgment at this stage.

parties.

**IT IS SO ORDERED.**

Dated:      March 31, 2014
               Albany, NY

Lawrence E. Kahn
U.S. District Judge